# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROMEO RAMIREZ, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. SA-21-CV-01050-XR |
| | § | |
| LHOIST NORTH AMERICA OF TEXAS, LLC, | § | |
| | § | |
| *Defendant*. | § | |

## ORDER

On this date, the Court considered Defendant's motion for summary judgment (ECF No. 17), Plaintiff's response (ECF No. 19), and Defendant's reply (ECF No. 20). After careful consideration, the Court issues the following order.

## BACKGROUND[1]

This case arises out of alleged race discrimination and retaliation under 42 U.S.C. § 1981. Plaintiff Romeo Ramirez ("Plaintiff") first became employed with Defendant Lhoist North American of Texas, LLC ("Defendant" or "Lhoist") in 1995 and was employed there until his termination on June 4, 2020. ECF No. 17-3, Ramirez Dep. at 5:24–6:2. Lhoist is a producer of lime and lime-based products used in steel making, ore processing, industrial manufacturing, and construction. ECF No. 17-2, Sonnenberg Decl. at 2. During his time at Lhoist, Plaintiff was a mechanic. ECF No. 17-3, Ramirez Dep. at 6:13–7:19. He served as lead on various large projects and at one point oversaw the mechanical department. *Id*.

Plaintiff's job description included the following roles and responsibilities:

---
[1] These facts are undisputed unless otherwise noted.

1

1. Maintenance
   - Perform preventive maintenance on the mechanical including inspection and lubrication.
   - Routine replacement of bearings, idlers, dust collector bags, gear boxes and drive belts and repairs for any type of crusher, screen and conveying equipment.
   - Torch cutting and arc welding with the ability to set torch gauges and welding machines properly.
   - Hydraulic and pneumatic knowledge to troubleshoot failures.
   - Disconnect, replace, and reconnect low voltage motors within the plant using proper wiring, lugging, and insulating procedures.
   - Repair and maintain plant equipment.

2. Safety
   - Maintain tools in safe and good working condition.
   - Perform all assigned work adhering to Company and governmental safety rules and regulation and follow company lock out tag out procedures.
   - Responsible for equipment and safety work area inspections.
   - Report any potential operational or safety problems to management.

3. Perform General Plant labor in all operational areas of the plant.

ECF No. 17-2 at 57–58 (Mechanic Job Description).

To help ensure employee safety, Defendant has established "Cardinal Safety Rules." ECF No. 17-2 at 10–13 (Cardinal Safety Rules). "The Cardinal Safety Rules highlight critical safety rules that must be followed to ensure a safe work place for all." *Id.* at 11. The Cardinal Safety Rules include the following:

> Life-Critical Safety Rules (Category I)
> - Use proper fall protection
> - Follow Lock-out/Tag-Out/Try
> - Follow confined space procedures
> - Report honestly
> - Work drug & alcohol free
>
> Serious Safe Rules (Category II)
> - Use seat belts
> - Conduct pre-shift inspections
> - Report unsafe acts/conditions
> - Maintain safety devices
> - Complete task training
> - Use required PPE

- Respect barricades

*Id*. at 10. Included among the most serious "life critical" Category I Cardinal Safety Rules, Lhoist requires employees to "use proper fall protection" when working above a certain height. *Id*. at 12.

Plaintiff testified that he was aware of Defendant's fall protection rule. ECF No. 17-3, Ramirez Dep. at 109:11–15. Plaintiff testified that he was also aware of and regularly trained on Defendant's Cardinal Safety Rules during his employment. *See, e.g.*, *id*. at 114:9–18. Of particular significance, Plaintiff also testified that he was aware that, when employees were "working more than four feet off the ground, [they] were supposed to wear fall protection." *Id*. at 117:10–19.

In April of 2017, Plaintiff was cited for a safety violation involving a failure to lock-out-tag-out. He received a written warning for this violation. *Id*. at 40:5–41:3. On May 26, 2020, Plaintiff was working seven feet off of the ground to install two clamps on the side of a conveyor belt at the New Braunfels plant. *Id*. at 84:11–25;. 87:11–16. A Mine Safety and Health Administration ("MSHA") inspector, Jason Hoermann ("Hoerrman") was conducting a routine inspection of Lhoist's plant on that day. Plaintiff admitted to Hoermann that he should have been wearing fall protection while working on the belt. *Id*. at 92:23–25. A MSHA citation was issued, and Plaintiff was suspended by Defendant later that day for committing a Cardinal Safety Rule violation. *Id*. at 83:3–9. Specifically, Defendant suspended Plaintiff because the company believed Plaintiff should have been wearing fall protection while working at an elevated height on a conveyor belt. *Id*. at 83:10–14. Plaintiff was sent home later that day and informed that there was going to be an investigation into the situation. *Id*. at 97:18–98:2.

On June 4, 2020, Plaintiff met with Plant Manager Aaron Jones ("Jones"), Maintenance Manager Robert DeWare ("DeWare"), and Human Resources Manager Rubyanne Sonnenberg ("Sonnenberg"). *Id*. at 104:14–21. Plaintiff was given the option to either voluntarily resign or be involuntarily terminated. *Id*. at 105:9–14. Plaintiff testified that, because he believed that there were lies included in the document that Lhoist wanted him to sign, he refused to sign it. *Id*. at 25:2–9. He testified that Jones noted that if he did not sign the papers, "they were going to make it hard on [him] to get a job." *Id*. at 25:13–26:19.

Plaintiff's termination letter, dated June 4, 2020, indicated that Plaintiff was terminated after Lhoist's determination that Plaintiff was "aware fall protection was needed but . . . did not wear [his] fall protection while working at heights." ECF No. 17-3 at 42 (Termination Letter). The letter further specified that after being asked to stop work and come down by the Environmental Health and Safety Manager, Plaintiff continued to work and did not acknowledge the manager when he did come down. *Id*. Finally, the letter noted Plaintiff's "lack of respect and poor attitude" were considered in the determination to end Plaintiff's employment with Defendant. *Id*.

Plaintiff testified that over the course of his employment with Lhoist, he and other Hispanics were called "wet backs" and "beaners." ECF No. 19-1, Ramirez Aff. at 2. He specified that Larry Hopkins and James Batey ("Batey") referred to him using those derogatory terms in the beginning of 2020. *Id*. He testified that he was ridiculed for his accent, including by a former supervisor, Kenneth Pledger. *Id*.; ECF No. 17-3, Ramirez Dep. at 80:8–13. He also testified that he reported this discriminatory conduct to his Maintenance Manager, Jorge Tostado,[2] about two years prior to his termination in 2020. ECF No. 19-1, Ramirez Aff. at 2. He also testified that he complained internally at Lhoist to Aaron Jones, Robert Shannon, Don Killebrew, and another

---

[2] This individual is also referred to as Jose Posados at ECF No. 17-3, Ramirez Dep. at 80:27.

4

individual in HR one year prior to his termination. ECF No. 17-3, Ramirez Dep. at 125:4–12. Finally, Plaintiff testified that DeWare told him that he needed to watch his back because Jones wanted to get rid of him; he testified that both DeWare and Jones were aware that he had complained to management about the discrimination and harassment he was enduring. ECF No. 19-1, Ramirez Aff. at 2.

Plaintiff filed his original petition in the 57th Judicial District of Bexar County on July 21, 2021. ECF No. 1-1 at 11. Defendant removed the case to this Court on October 27, 2021. ECF No. 1 at 1. On July 25, 2022, Defendant filed a motion for summary judgment on Plaintiff's Section 1981 claims for race discrimination and retaliation. ECF No. 17. Plaintiff responded on August 14, 2022. ECF No. 19. Defendant replied on August 22, 2022. ECF No. 20. On January 8, 2023, Plaintiff's counsel filed a motion to withdraw (ECF No. 24), which the Court granted on January 9, 2023. The motion indicated that Plaintiff intended to proceed pro se.

## DISCUSSION

### I.   Legal Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en banc*, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant carries its initial burden, the

burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of South Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For the Court to conclude that there are no genuine issues of material fact, the Court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the Court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party, *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

II.     Analysis

   A. **Race Discrimination Claim Under 42 U.S.C. § 1981**

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . ." 42 U.S.C. § 1981(a). The phrase "make and enforce contracts" is defined as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Title VII and § 1981 "are functionally identical" for the purposes of claims for employment discrimination and retaliation. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999).

Where a plaintiff lacks direct evidence of discrimination, the burden-shifting framework established by the Supreme Court in *McDonnell Douglas* governs. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). In order to survive summary judgment under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discrimination by showing that (1) he is a member of a protected class, (2) he is qualified for the position at issue, (3) he suffered an adverse employment action, and (4) he was replaced by someone outside the protected class or was treated less favorably than others similarly-situated. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001) (citing *McDonnell Douglas*, 411 U.S. 792 and *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133 (2000)).

If the plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its action. *Okoye*, 245 F.3d at 512. If the defendant satisfies its burden of production, the plaintiff may still prevail by offering sufficient evidence to create a genuine issue of material fact that either (1) the defendant's reason is false and is a pretext for discrimination, or (2) that although the defendant's reason is true, the

Case 5:21-cv-01050-XR   Document 25   Filed 01/11/23   Page 8 of 16

plaintiff's protected characteristic was a "motivating factor" in its decision. *McDonnell Douglas*, 411 U.S. at 804–05; *Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 394 (5th Cir. 2008). Thus, to survive summary judgment, the plaintiff must raise a fact issue as to whether the employer's proffered reason was either mere pretext for discrimination or only one motivating factor. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000). "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 (5th Cir. 2016).

The Court concludes that Plaintiff has not established a prima facie case of race discrimination under § 1981. It is undisputed that Plaintiff is a member of a protected racial class (Hispanic) and that his termination constitutes an adverse employment action. Defendant contends that Plaintiff cannot satisfy the second element because he was not meeting Lhoist's legitimate job expectations. Defendant also challenges Plaintiff's ability to satisfy the fourth element of his prima facie case, asserting that he has failed to identify any proper comparators.

Regarding the second element of his prima facie case, Defendant contends that, because Plaintiff was not meeting its job expectations with regard to safety standards, Plaintiff was not qualified for his position. "Qualifications" for a job refer to objective factors, such as "degrees, certificates, skills and experience." *Taylor v. Cnty. Bancshares, Inc.*, 325 F. Supp. 2d 755, 769–70 (E.D. Tex. 2004) (citing *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 n.10 (1st Cir. 1979)). Generally, "unless the employee's job has been redefined, the fact that [he] was hired initially indicates that [he] had the basic qualifications for the job, in terms of degrees, certificates, skills and experience." *Id.* Thus, "a plaintiff challenging [his] termination or demotion can ordinarily

8

establish a prima facie case of . . . discrimination by showing that [he] continued to possess the necessary qualifications for [his] job at the time of the adverse action." *Id.* (citing *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1505–06 (5th Cir. 1988)). Plaintiff, prior to his termination, had received only one warning for a safety violation in the course of his employment with Defendant. ECF No. 17-3, Ramirez Dep. at 40:5–41:3. While this singular violation resulted in a written warning, no other action was taken regarding the incident, and because it occurred in 2017, it does not support Defendant's theory that Plaintiff became unqualified for his job. The Court holds that Plaintiff has satisfied the second element of his prima facie case.

With regard to the fourth element of his prima facie case, Plaintiff has not offered any evidence showing that he was replaced by someone outside of his protected class. Notably, Lhoist hired Sergio Rangel, a Hispanic individual, to replace Plaintiff after he was terminated. ECF No. 17-2, Sonnenberg Decl. at 5. Therefore, to establish the fourth element of his prima facie case, Plaintiff must establish that he was treated less favorably than others similarly situated. To do so, Plaintiff offers his testimony that three non-Hispanic employees—Greg Murray, James Batey, and Don Schubert—were treated more favorably than him due to race.

To serve as a proper comparator in the Fifth Circuit, another employee must be sufficiently situated to the Plaintiff. *See, e.g.*, *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 262 (5th Cir. 2009) (concluding that disparate treatment of two employees who held identical positions at the same company, compiled a similar number of serious moving violations over a similar period of time, and whose ultimate employment status rested with the same person could be properly compared for the purposes of establishing the plaintiff's prima facie case).

Defendant contends, and the Court agrees, that Murray is not a proper comparator to Plaintiff given their different roles at Lhoist. Plaintiff testified that Murray was involved in a

safety incident after he failed to wear proper fall protection. ECF No. 17-3, Ramirez Dep. at 31:9–33:1. Unlike Plaintiff, however, who was a mechanic, Murray was a production manager at Lhoist. He had supervisory duties and performed different job duties than Plaintiff. *Id*. at 34:23–35:1. "He was the manager for the whole production department." *Id*. at 37:12–14. Overseeing his own crew, Plaintiff acknowledged that Murray was senior and higher in the company's hierarchy than Joseph Cook (Plaintiff's direct supervisor). *Id*. at 38:3–6.

Defendant next argues, and the Court again agrees, that Batey and Schubert are not proper comparators in this case. Batey and Schubert are both mechanics. ECF No. 19-1 at 3 (Ramirez Affidavit). With regard to Batey, Plaintiff alleges that he was involved in a lock-out-tag-out violation, serving as evidence that Plaintiff was treated less favorably due to his race. ECF No. 17-3, Ramirez Dep. at 40:5–41:3. However, in contemporaneous witness statements taken at the time of the incident, Safety Manager Christine Lemanski ("Lemanski") noted that, unlike Plaintiff, Mr. Batey "was not 'hands-on' the equipment." ECF No. 17-3 at 67 (April 2017 Safety Incident Witness Statement). Second, and importantly, Batey did not receive an MSHA citation for this alleged violation, distinguishing his conduct from Plaintiff's, who was observed committing the infraction by MSHA inspector Hoermann and subsequently cited. ECF No. 17-2 at (MSHA Citation).

Schubert, also a mechanic, committed a similar lock-out-tag-out safety violation. ECF No. 17-3, Ramirez Dep. at 60:15-61:17. Again, however, because Lhoist was not issued a MSHA citation from Mr. Schubert's conduct, this safety violation did not occur under "nearly identical circumstances" to Plaintiff's. "Results of dissimilar violations will generally not be considered similarly situated." *Moore v. Univ. Miss. Med. Ctr.*, 719 F. App'x 381, 385 (5th Cir. 2018) (internal quotations and citation omitted). Plaintiff, to establish his prima facie case, must have

presented evidence indicating that another, non-Hispanic mechanic committed a Category I Cardinal Safety Rule violation, and that such violation resulted in similar consequences (e.g., a MSHA citation) and was not terminated. Plaintiff has failed to do so.

Even if the Court considered Batey or Schubert to be proper comparators, Plaintiff's claim for race discrimination under 42 U.S.C. § 1981 otherwise fails because Plaintiff is ultimately unable to prevail under the *McDonnell Doulas* burden-shifting framework. Assuming, *arguendo*, that Plaintiff has met all four elements of his prima face claim, the burden shifts to Defendant to proffer a legitimate, nondiscriminatory reason for terminating Plaintiff. Defendant has satisfied its burden in doing so; Defendant Lhoist terminated Plaintiff after its investigation concluded that he did not wear fall protection while working at heights, in violation of a Category I Cardinal Safety Rule. *See, e.g.*, ECF No. 17-3 at 42 (Termination Letter).

The burden therefore shifts back to Plaintiff to offer sufficient evidence to create a genuine issue of material fact that either (1) the defendant's reason is false and is a pretext for discrimination, or (2) that, although the defendant's reason is true, the plaintiff's protected characteristic was a "motivating factor" in its decision. *McDonnell Douglas*, 411 U.S. at 804–05; *Tratree*, 277 F. App'x at 394. "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Outley*, 840 F.3d at 217.

Plaintiff alleges that various discriminatory comments were made about him during the course of his employment with Defendant Lhoist and he also alleges that he was made fun of for having an accent. *See* ECF No. 19-1, Ramirez Aff. at 2. Among the individuals that Plaintiff alleges made these comments or made fun of his accent are Kenneth Pledger, Larry Hopkins, and James Batey. *Id*.

Plaintiff, however, does not offer any evidence that any of his supervisors—Cook, DeWare, and Jones—nor the two individuals who made the decision to terminate him—Dan Brock ("Brock") and Valentine Berghmans ("Berghmans")—made any rude, offensive, or derogatory remarks about his race. Plaintiff admitted in his deposition that he does not believe that either Brock or Berghmans discriminated against him because of his race. ECF No. 17-3, Ramirez Dep. at 81:19–82:6 (Plaintiff testified that he did not know who Brock was and confirmed that neither Brock nor Berghmans ever made any rude, offensive, or discriminatory comments about his race). Because there is no evidence that Plaintiff's race played a role in his termination, Plaintiff cannot satisfy his burden of demonstrating pretext. Subjective belief of discrimination, however genuine, and conclusory statements cannot be the basis of judicial relief. *See Jones v. Gulf Coast Rest. Grp., Inc.*, No. 21-60052, 2021 WL 3465000, at *4 (5th Cir. Aug. 6, 2021). Plaintiff's race discrimination claim under 42 U.S.C. § 1981 is therefore dismissed.

### B. Retaliation Claim Under 42 U.S.C. § 1981

In the Fifth Circuit, retaliation claims under 42 U.S.C. § 1981 are analyzed identically to claims under Title VII. *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002). Accordingly, the *McDonnell Douglas* burden-shifting framework also governs Plaintiff's retaliation claims. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000). The prima facie case for retaliation requires the plaintiff to show that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 269 (5th Cir. 2015).

"Protected activity" is defined as "opposition to any practice made unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding,

or hearing under Title VII." *Green v. Admins. of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Apr. 26, 2002) (citing 42 U.S.C. § 2000e–3(a)). The retaliation provisions of Title VII have been interpreted to "protect[] not only the filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). An employee who files an internal complaint of discrimination engages in a protected activity. *Flowers v. Tex. Mil. Dep't*, 391 F. Supp. 3d 655, 668 (S.D. Tex. 2018) (citing *Rodriquez v. Wal-Mart Stores, Inc.*, 540 F. App'x 322, 328 (5th Cir. 2013) (concluding that, while opposition to discrimination need not be in formal written form, the plaintiff's internal complaints to management did not constitute a protected activity because "they did not allege discrimination or any other unlawful employment activity")).

In order to establish the causal link, "the evidence must show that the employer's decision to terminate was based in part on knowledge of the employee's protected activity." *Sherrod v. Am. Airlines*, 132 F.3d 1112, 1122 (5th Cir. 1998). Close timing between an employee's protected activity and an adverse action against him is frequently used to establish the "causal connection" required to make out a *prima facie* case of retaliation. *Swanson v. Gen. Serv. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (citing *Armstrong v. City of Dallas,* 997 F.2d 62, 67 (5th Cir. 1993)). There is no bright-line rule in the Fifth Circuit for determining whether the time between the protected activity and the allegedly retaliatory conduct is too remote. *See Shirley v. Chrysler First, Inc.*, 970 F.2d 39 (5th Cir. 1992) (declining to hold that the passage of fourteen months between the filing of the plaintiff's EEOC complaint and the date of termination was "legally conclusive proof against retaliation"); *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (noting that "a time lapse of up to four months has been found sufficient"

13

evidence of a causal connection). "Consideration of such dates is part of our analysis, but not in itself conclusive of our determinations of retaliation," especially where there is other evidence of retaliatory intent. *Shirley*, 970 F.2d at 40.

Once the plaintiff meets this prima facie burden, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for the adverse employment action. *Robinson v. Jackson State Univ.*, 714 F. App'x 354, 359 (5th Cir. 2017) (citing *Raggs*, 278 F.3d at 468). And, finally, once the employer supplies such a justification, the "burden then shifts back to the plaintiff to show by a preponderance of the evidence that the employer's nondiscriminatory explanation is pretextual." *Id.*

Plaintiff has not stated a prima facie case for retaliation in this case. The parties do not dispute that Plaintiff engaged in a protected activity (making internal complaints to Defendant Lhoist's management and human resources personnel), nor do the parties dispute that Plaintiff suffered an adverse employment action (his termination of employment). Defendant, contends, however, and the Court agrees, that Plaintiff cannot succeed in demonstrating that there is a causal connection between the protected activity and the adverse employment action.

First, Plaintiff fails to establish a causal connection because there is no evidence offered that Brock or Berghmans, the two individuals who decided to terminate Plaintiff, were aware of Plaintiff's internal complaints. Second, and notably, the internal complaints that Plaintiff voiced occurred at least one year prior to his termination. *See* ECF No. 17-3, Ramirez Dep. at 125:10–12; *see also* ECF No. 19-1, Ramirez Aff. at 2. As Fifth Circuit case law makes clear, the passage of more than one year between Plaintiff's internal complaints and his termination undermines the causal connection needed to make a prima facie case of retaliation but is not alone dispositive. *See, e.g.*, *Shirley*, 970 F.2d at 40 (indicating that evidence of retaliatory intent can help to bolster

claims of retaliation because dates alone are not conclusive). However, absent any other offered evidence of retaliatory intent, the Court concludes that there is no causal connection between Plaintiff's internal complaints and his termination. Where, as here, "there was a lack of clear temporal proximity between the complaints and the negative job consequences, [it is] difficult to find the sharp decline in treatment we have previously used to infer causality, and with it, pretext." *Khalfani v. Balfour Beatty Cmtys., L.L.C.*, 595 F. App'x 363, 366 (5th Cir. 2014). Plaintiff has offered no evidence to support his contention that he was retaliated against because he complained internally to management and HR personnel more than a year before he was terminated.

The Court again notes, however, that for the same reasons that Plaintiff's race discrimination claim ultimately fails, Plaintiff's retaliation claim similarly fails under the *McDonnell Douglas* burden-shifting framework. Assuming, *arguendo*, that Plaintiff did establish a prima facie case of retaliation, Defendant has articulated a legitimate, nondiscriminatory reason for Plaintiff's termination—his violation of a Category I Cardinal Safety Rule. The burden therefore shifts back to Plaintiff to show, by a preponderance of the evidence, that Lhoist's explanation was pretextual.

"[C]omments are admissible to show pretext if they 1) show retaliatory animus and 2) were made by the individual primarily responsible for the retaliatory conduct." *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 581 (5th Cir. 2004). Plaintiff does not offer any evidence that those responsible for his termination harbored ill-will against him because of his complaints. Even the comment about his "attitude" in the termination letter, ECF No. 17-3 at 42, isn't a sufficiently explicit reference to his complaints of racial discrimination to create a fact issue as to

whether he was fired "because of" his protected activity. Plaintiff's retaliation claim under 42 U.S.C. § 1981 is therefore dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 17) is **GRANTED.** Plaintiff shall take nothing by his claims, and his claims are **DISMISSED WITH PREJUDICE**.

Defendant is awarded costs and may file a bill of costs pursuant to the local rules. A final judgment pursuant to Rule 58 will follow.

The Clerk is **DIRECTED** to send a copy of this Order to Plaintiff by email to rramirez12405@icloud.com and by mail to Romeo Ramirez, 1108 Spies Drive, Eagle Pass, Texas 78852.

It is so **ORDERED**.

**SIGNED** this 11th day of January, 2023.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE